# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**ERIC R.**[1],

       Plaintiff,

   v.

**ANDREW M. SAUL,** Commissioner of
Social Security,

       Defendant.

Case No. 6:19-cv-0025-SI

**OPINION AND ORDER**

Robyn M. Rebers, ROBYN M. REBERS LLC, P.O. Box 3530, Wilsonville, OR 97070. Of
Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204;
Justin L. Martin, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social
Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of
Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Eric R. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for supplemental

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

social security income ("SSI") and disability insurance benefits ("DIB"). Because the Commissioner's findings were not supported by substantial evidence, the decision is **REVERSED** and this case **REMANDED** for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on August 1, 1974. He applied for SSI and DIB on May 21, 2015, alleging a disability onset date of May 18, 2015. He was 40 years old as of the alleged onset date. The grounds for these applications were medical conditions including panic disorder, severe anxiety, agoraphobia, obsessive-compulsive disorder, Klinefelter syndrome, profound memory loss, headaches, chronic anger, and some intellectual delay. AR 274. Both his applications were denied first on September 21, 2015 and upon reconsideration on December 1, 2015. AR 165, 180. Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on December 3, 2015. The hearing occurred before ALJ Erickson on October 11, 2017. AR 39. Plaintiff appeared and testified at the hearing. A few months later, the ALJ issued a written decision denying Plaintiff's applications for DIB and SSI. AR 15. Plaintiff requested review of the ALJ's decision. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Plaintiff now seeks judicial review of the Commissioner's final decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since the alleged disability onset date. AR 17. At step two, the ALJ found that Plaintiff suffered from the following severe medically determinable impairments: obesity, lymphedema, bipolar disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder (secondary to Klinefelter syndrome), personality disorder, and panic disorder with agoraphobia. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404. AR 20.

Between step three and step four, the ALJ determined that Plaintiff had the residual

functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 416.967(a) and

404.1567(a). AR 22. The ALJ added the following limitations:

> The claimant can never climb ladders, ropes or scaffolds. The
> claimant can occasionally climb ramps and stairs. The claimant can
> occasionally balance, stoop, crouch, kneel, and crawl. The
> claimant can occasionally use foot controls bilaterally. The
> claimant can have occasional exposure to vibration and extreme
> cold temperatures. Mentally, the claimant can understand,
> remember, and apply short and simple instructions. The claimant
> can perform routine, predictable tasks. The claimant cannot work
> in a fast paced production type environment. The claimant can
> make simple decisions. The claimant can be exposed to only few
> workplace changes. The claimant can have no interaction with the
> general public and only occasional interaction with coworkers.

*Id.* At step four, the ALJ found that Plaintiff could not perform any of his past relevant work

experience. AR 28. At step five, the ALJ found that jobs existed in significant numbers in the

national economy that Plaintiff could perform, including nut sorter, addresser, and semi-

conductor bonder. AR 29.

## DISCUSSION

Plaintiff argues that the ALJ's decision finding Plaintiff not disabled was not supported

by substantial evidence. Plaintiff argues that the ALJ improperly rejected several medical source

opinions, improperly rejected Plaintiff's own subjective symptom testimony, and did not include

all supported functional limitations in formulating Plaintiff's RFC.

### A.  The ALJ's Rejection of the Medical Opinions of Dr. Lindley, Dr. Gutierrez Holguin, and Dr. Freed

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th

Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians:

treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*,

759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

The ALJ generally also must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*¸ 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

### 1. Dr. Lindley

Dr. Lindley treated Plaintiff several times between November 2014 and June 2015. AR 482. She provided a medical source opinion in November 2015 in which she opined that Plaintiff's mental state was "very labile and hostile." AR 649. In her functional assessment, she wrote that Plaintiff had moderately severe to severe limitations in his ability to work near others and to complete a normal workweek without interruption from psychologically based symptoms. AR 646. She noted that he was severely limited in his ability to maintain socially appropriate

behavior, interact with the general public, and accept and respond to instructions from supervisors. AR 647. The ALJ gave Dr. Lindley's opinion only "some weight." AR 27. Even though Dr. Lindley is a treating physician, several state agency consultants contradicted Dr. Lindley's opinion and proposed less restrictive limitations. Thus, the question is whether the ALJ provided "specific and legitimate" reasons for rejecting Dr. Lindley's opinion. *Ryan*, 528 F.3d at 1198.

ALJ Erickson provided two reasons to reject Dr. Lindley's opinion. He noted (1) that Dr. Lindley's opinion was inconsistent with Plaintiff's testimony about his relationships with his family and friends, and (2) that Plaintiff's mental health improved when he took medication. Inconsistencies with activities of daily living (ADLs) are only probative to the extent that Plaintiff's ADLs meet the "threshold for transferrable work skills." *Orn*, 495 F.3d at 639. Indeed, "one need not vegetate in a dark room to be eligible for benefits." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). The Ninth Circuit has explained that ADLs are relevant only to the extent that they translate to "the more grueling environment of the workplace," *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), or are inconsistent with a plaintiff's claimed limitations, *Reddick*, 157 F.3d at 722. The ALJ did not analyze whether Plaintiff's limited interactions with his acquaintances and family translate to any ability to function in the modern workplace. This was legal error. But for the reasons discussed below, it was harmless error.

The ALJ also discounted Dr. Lindley's opinion because he found that it was inconsistent with Plaintiff's reports that his symptoms improved when he took medication. One provider noted that Plaintiff reported his auditory hallucinations disappeared when he took Zyprexa. AR 1211. Plaintiff also told another provider that when he takes Depakote, he does not "have anger," he is "just kind of mellow," and his "moods are stable." AR 739. More recently, in 2017,

Plaintiff told a provider that "Depakote and Clonidine really help keep his mood down and his anger under control." AR 1395. These instances of Plaintiff's symptom testimony are inconsistent with Dr. Lindley's opinion, and are valid reasons for discounting it. *Andrews*, 53 F.3d at 1042-43. Thus, because the ALJ provided an alternate specific and legitimate reason for rejecting the opinion, "the ALJ's decision remains legally valid, despite such error." *Carmickle*, 533 F.3d at 1162.

## 2. Dr. Gutierrez Holguin

Dr. Gutierrez Holguin is a treating physician who stated that Plaintiff's "ambulation has been affected by the swelling and weight of the edema which hasn't improved with conventional medication." AR 1038. Because Plaintiff "cannot sit or stand for [a] prolonged time," Dr. Gutierrez Holguin found that he would not be able to function in a job in his current medical condition. *Id.* The ALJ assigned Dr. Gutierrez Holguin's opinion little weight because it was inconsistent with Plaintiff's reported improvement when he elevated his legs daily, his prior work history, and medical advice from other providers. Because Dr. Gutierrez Holguin is a treating physician, the Court must determine whether the ALJ provided specific and legitimate reasons to reject his opinion.

Plaintiff's prior work history and the medical advice of other providers are not specific and legitimate reasons to reject Dr. Gutierrez Holguin's opinion. The ALJ did not identify any actual inconsistencies between these sources and Dr. Gutierrez Holguin's opinion. Plaintiff's prior work history is not probative because it precedes the onset of Plaintiff's alleged disability. AR 275. That he used to be able to perform medium exertional work is inconsequential because Plaintiff stopped working on May 18, 2015—the alleged date of disability onset. *Id.* The Court is also not persuaded that treatment recommendations to walk often are inconsistent with Dr. Gutierrez Holguin's restrictive limitations. All the references to walking predate the disability

onset date. AR 423, 969-97. These errors, however, are "inconsequential to the ultimate nondisability [sic] determination" because the ALJ also gave an adequate rationale. *Molina*, 674 F.3d at 1104.

Plaintiff's reported improvement when he elevated his legs daily is a specific and legitimate reason to reject Dr. Gutierrez Holguin's medical source opinion. Medical opinions that are inconsistent with evidence of improvement can be discounted on that basis. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (upholding ALJ's rejection of treating psychologist's contradicted opinion because it conflicted with treatment notes showing claimant's improved functioning). It was reasonable to infer that Dr. Gutierrez Holguin's restrictive limitations would be unnecessary if Plaintiff were able to elevate his legs as needed.

### 3. Dr. Freed

Dr. Freed examined Plaintiff in September 2017 and opined that he would "be unable to interact with the general public, co-workers, and supervisors." AR 26. Additionally, Plaintiff "would have days when he would be unable to sustain a routine." *Id.* The ALJ provided several specific and legitimate reasons for assigning Dr. Freed's opinion little weight. Not only was Dr. Freed's assessment inconsistent with the opinions of state agency physicians, it was also inconsistent with Plaintiff's own reports that he improved when he took medication—the same reason that the ALJ properly rejected Dr. Lindley's medical source opinion. *See Morgan,* 169 F.3d at 601 (holding that the opinion of a non-examining physician may serve as substantial evidence that justifies rejection of the opinion of an examining physician when it is consistent with other evidence in the record). The ALJ also stated that Dr. Freed's report was internally inconsistent, because Dr. Freed assessed marked limitations in understanding, remembering, and applying information despite finding only moderate impairments in attention, recent memory, and overall intellectual ability. AR 26. This is a specific and legitimate reason for rejecting Dr.

Freed's opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (holding that inconsistency between a doctor's chart notes and the doctor's ultimate opinion is a valid reason to reject their opinion).

Plaintiff disputes the ALJ's finding that Dr. Freed's opinion is internally inconsistent, arguing that Dr. Freed did not specifically define the term "moderate" in his narrative report. The questionnaires Dr. Freed filled out defined "moderate" and "moderately severe" limitations as limitations between 3 percent and 13 percent and 14 percent and 20 percent, respectively. AR 1388. Dr. Freed's narrative statement and questionnaire responses are neither clearly consistent nor clearly inconsistent. Where the evidence is susceptible to more than one rational interpretation, a Court must uphold the ALJ's decision. *See Burch*, 400 F.3d at 679. It was not irrational for the ALJ to determine that Dr. Freed's ultimate opinion was inconsistent with his treatment notes. Thus, the ALJ properly rejected Dr. Freed's medical opinion.

It was also proper for the ALJ to reject Dr. Freed's opinion because it was inconsistent with other evidence in the record that Plaintiff was exaggerating his symptoms. Plaintiff failed two measures of performance validity when Dr. Binder examined him. AR 421-34. The ALJ reasonably inferred that this signified that Plaintiff tended to exaggerate the significance of his mental health symptoms. *See Andrews*, 53 F.3d at 1035 (noting that it is the ALJ's responsibility to resolve conflicts in medical expert testimony).

The ALJ, however, improperly cited Plaintiff's work history as a reason to reject Dr. Freed's opinion. This was improper for the same reason Plaintiff's work history did not justify rejecting Dr. Gutierrez Holguin's medical opinion. But like that mistake, it was also a harmless error. *Molina*, 674 F.3d at 1104 (holding that error is harmless where ALJ already provided adequate rationale for rejecting medical opinion).

**B. The ALJ's Rejection of Plaintiff's Symptom Testimony**

**1. The Two-Step Process and Summary of Symptom Testimony**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

The Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with SSR 16-3p. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source

statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ accurately summarized Plaintiff's testimony about his mental and physical symptoms. Plaintiff testified that he is "unable to hold down a job because of mental health problems, including anger management and difficulty focusing." AR 23. He left his last job for reasons other than his alleged disability, but the firing triggered a nervous breakdown and symptoms of post-traumatic stress disorder. AR 59. Plaintiff stated that he did not want to work a menial job because it would not be intellectually stimulating enough. Yet Plaintiff also stated that jobs requiring "high mental capacity" would overwhelm him. AR 63. Plaintiff further reported that lymphedema in his legs made it difficult to stand and sit for longer periods of time, although the lymphedema improved when he could elevate his legs daily. At the hearing, Plaintiff told the ALJ that his lymphedema only went away if he could lay on his back and put his feet up. AR 85. He testified that he would only be able to function at a job where he could lay on his back and put his feet up. *Id.*

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying step one of the framework. AR 24. The ALJ, however, determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." AR 24. Thus, the question is whether the ALJ provided "clear and convincing" reasons for rejecting Plaintiff's symptom testimony.

## 2. Testimony About Mental Impairments

The Court agrees that the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony about his alleged mental impairments. The ALJ examined the record and found that Plaintiff's "pattern of treatment, clinical signs, and diagnostic tests" conflicted with

aspects of his testimony. These are all clear and convincing reasons for rejecting Plaintiff's

symptom testimony. The ALJ noted that Plaintiff's mental health symptoms responded well to

treatment. Plaintiff told a provider that the combination of Depakote and Clonidine kept his

mental health symptoms under control. AR 1395. "Effectiveness" of treatment is a proper reason

for an ALJ to reject a plaintiff's symptom testimony at step two. *Orteza*, 50 F.3d at 750 (using

the old phrasing of "credibility" but holding that the effectiveness of treatment in controlling

symptoms is a relevant factor). Together with Plaintiff's positive response to treatment, the ALJ

noted that Plaintiff sought minimal treatment during certain periods. He received no regular

psychiatric treatment between June 2016 and September 2017. "Unexplained, or inadequately

explained, failure to seek treatment" absent a good reason is a valid reason for rejecting symptom

testimony. *Fair*, 885 F.2d at 603. Although Plaintiff notes that he was admitted to hospitals

several times during this period, he does not explain why he did not seek treatment in the first

place. The ALJ also noted that even when Plaintiff did seek treatment, he often did not comply

with it. AR 24.

The ALJ described Plaintiff's "focus on getting disability benefits rather than improving

his condition." AR 25. By itself, a focus on obtaining disability benefits is not a clear and

convincing reason to reject symptom testimony— "[i]f the desire or expectation of obtaining

benefits were by itself sufficient to discredit a claimant's testimony, then no claimant . . . would

ever be found credible." *Ratto v. Secretary, Dep't. Of Health & Human Serv.*, 839 F. Supp. 1415,

1428-29 (D.Or. 1993). The ALJ's reasoning goes beyond Plaintiff's mere desire to obtain

benefits. Plaintiff told one of his providers that he "has no interest in working to contribute to

society and would prefer that he qualify for disability." AR 1313. The ALJ reasonably

interpreted this statement as inconsistent with Plaintiff's other testimony that it was his

disabilities, not lack of motivation, that prevented him from working. *See Ghanim*, 763 F.3d at 1163 (noting that ALJ can properly consider a plaintiff's prior inconsistent statements concerning their symptoms).

Most importantly, the ALJ pointed out inconsistencies between Plaintiff's testimony and his treatment record. Plaintiff alleged that he suffered from memory problems, but treatment notes did not substantiate these complaints. AR 441. Despite Plaintiffs' reports of emotional instability and angry outbursts, a physician who examined him in 2017 stated that Plaintiff showed no evidence of depression, anxiety, or agitation. An ALJ may not discount subjective symptom testimony "on the sole ground that [it is] not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ here went beyond this by identifying specific inconsistencies between Plaintiff's mental health symptom testimony and the objective medical record. Such inconsistencies are clear and convincing reasons for rejecting Plaintiff's mental health symptom testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (concluding that discrepancies between plaintiff's testimony and the objective medical record was a clear and convincing reason to reject plaintiff's testimony).

In addition to the above clear and convincing reasons for rejecting Plaintiff's symptom testimony, the ALJ also cited several invalid reasons. The ALJ's finding that Plaintiff's testimony was inconsistent with his ADLs was improper because he did not analyze whether the ADLs translated into functionality in the workplace. It was also improper to consider that Plaintiff left his last job for non-medical reasons, because he left that job before the alleged disability onset date. These errors were harmless because the ALJ also properly rejected Plaintiff's testimony based on valid clear and convincing reasons. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056.

### 3. Testimony About Physical Impairments

The Court does not agree that the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony about his physical limitations. The ALJ rejected Plaintiff's testimony on this topic because of perceived inconsistencies between Plaintiff's descriptions of his symptoms and the objective medical record. The ALJ found that Plaintiff's reports of his physical limitations were inconsistent with his lack of venous insufficiency. The ALJ did not explain why lack of venous insufficiency contradicted Plaintiff's account of his symptoms, especially given that the same provider stated that Plaintiff had "severe edema of the bilateral extremities due to lymphedema." AR 869. Indeed, Plaintiff never alleged that his physical symptoms were because of venous insufficiency. At the hearing, he told the ALJ that his physical symptoms stemmed from "edema," which the medical records confirm rather than contradict. AR 84. Thus, the ALJ did not provide a clear and convincing reason to reject Plaintiff's testimony about his physical symptoms. Because Plaintiff's testimony was not "permissibly discounted," the ALJ also erred by not factoring it into the RFC, as discussed below. *Batson*, 359 F.3d at 1197.

## C. The ALJ's RFC

The RFC represents the most that a claimant can do despite his or her physical or mental impairments. 20 C.F.R. § 404.1545. In formulating the RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." *Id.* In determining a claimant's RFC . . . the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations that are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). That is,

the ALJ need not "incorporate evidence from opinions . . . which were permissibly discounted." *Batson*, 359 F.3d at 1197.

Plaintiff objects to the omission of provisions in the RFC that would permit him to elevate his legs regularly during the workday and use a cane. Defendant argues that these restrictions are not supported by substantial evidence, because Plaintiff can elevate his legs overnight and the RFC already limits Plaintiff to sedentary work. The first argument is unpersuasive. The ALJ did not rely on Plaintiff's testimony that his lymphedema improved with overnight elevation in formulating the RFC's limitation, so Defendant cannot argue after the fact that it supports the ALJ's RFC. *See Bray*, 554 F.3d at 1226 (holding that a reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely). In a portion of the record that the ALJ did not cite, Plaintiff reported that he elevated his legs overnight on the dash of his car "without much effect." AR 867. Plaintiff told a provider that his symptoms improved only when he elevated his legs "daily" or "most of the day." AR 988, 995. The same provider urged Plaintiff to "elevate his legs *as much as possible*, especially overnight." AR 874 (emphasis added). Plaintiff testified that he did not "know of very many jobs where you can lay on your back and put your feet up," implying that his symptoms improved only when he was able to regularly elevate his feet during working hours. AR 85.

The second argument is unpersuasive as well. Plaintiff correctly points out that despite its name, "sedentary" work may involve walking up to one-third of the day. The ALJ even cited Plaintiff's prescription for a cane as a reason for discounting Dr. Gutierrez Holguin's medical opinion. AR 26. Thus, substantial evidence supports both the requested restrictions. Their omission is harmful legal error because the vocational expert did not consider these limitations in responding to the ALJ's hypothetical at the hearing. *See Magallanes v. Bowen*, 881 F.2d 747,

756 (9th Cir. 1989) (explaining that vocational expert testimony "is valuable only to the extent that it is supported by medical evidence.").

Plaintiff also argues that the ALJ should have accounted for Plaintiff's difficulties interacting with others and potential absenteeism in the RFC by including responsive limitations. Although Dr. Lindley and Dr. Freed stated that Plaintiff would not be able to sustain a regular work schedule, the ALJ properly rejected their opinions. The ALJ did include limitations that responded to Plaintiff's social difficulties—he limited Plaintiff to occasional interactions with coworkers and prohibited any interaction with the public. Even if the medical record might support more restrictive limitations, the mere "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The ALJ's formulation of social limitations is not unreasonable, so it is not this Court's role to second-guess it.

## D.  Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed reversible error when he improperly rejected Plaintiff's testimony about his physical symptoms. Consequently, the ALJ also erred when he did not include in his RFC limitations that Plaintiff's symptom testimony supported. The Court cannot, however, find that the record as a whole is free from all conflicts and ambiguities, or that Plaintiff would be found disabled if the ALJ had included the supported limitations in the RFC.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is **REVERSED AND REMANDED** for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 22nd day of January, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge